## UNITED STATES v. IRWIN.
### Cr. No. 358.

United States District Court
W. D. Arkansas. Hot Springs Division.
Oct. 5, 1949.

R. S. Wilson, United States Attorney, Fort Smith, Ark., David R. Boatright, Assistant United States Attorney, Fort Smith, Ark., for plaintiff.

C. Floyd Huff, Jr., Hot Springs, Ark., for defendant.

JOHN E. MILLER, District Judge.

On August 30, 1949, an indictment was returned against the defendant containing two counts. Count 1 charged that the defendant had in his possession and custody 30 gallons of non-tax-paid distilled spirits, and Count 2 charged that the defendant removed and concealed goods and commodities in respect whereof a Federal tax is imposed with intent to defraud the United States of such tax.

On September 22, 1949, the defendant filed a motion to suppress certain evidence obtained by State officers as the result of a search of defendant's automobile.

The motion to suppress came on for a hearing before the court on October 3, 1949, and at the conclusion of the introduction of testimony, the court announced that it would take the motion under advisement. The court has considered the testimony of the witnesses and has read and considered the authorities called to its attention, and now makes and files herein its findings of fact and conclusions of law, separately stated.

### Findings of Fact

1

On February 11, 1949, Lt. Erven W. Rowe and Patrolman Wilford E. Hughes of the Hot Springs, Arkansas, police department, were cruising on Grand Avenue in the City of Hot Springs, which is in the Western District of Arkansas, Hot Springs Division, when they observed two automobiles traveling in the opposite direction. Lt. Rowe recognized the driver of one of the automobiles and thought that he recognized the license number of the other. The officers gave pursuit, and after the car driven by a man named Lowrey, whom Lt. Rowe had recognized, had turned off on a gravel street, they followed and stopped the other car, which was being driven by the defend-

ant, Glen Hiram Irwin. Irwin did not try to elude the officers.

Lt. Rowe kept on his person a notebook with license numbers of suspected automobiles, and contained therein was the license number of the defendant's automobile. The Lt. did not remember where he got the license number or why he had it, and did not make a positive identification when he observed defendant's car. He merely thought it looked familiar and did not verify it before stopping the defendant.

### 2

The officers did not have a search warrant, but after stopping defendant, Patrolman Hughes proceeded to search defendant's car. He found concealed in the trunk of the car six five gallon jugs of contraband liquor with no stamps affixed denoting the quantity of distilled spirits or evidencing payment of all Internal Revenues taxes imposed by the United States. The contraband liquor was being removed and concealed with intent to defraud the United States of the tax.

At the same time or subsequent to the discovery of the liquor by Patrolman Hughes, the defendant stated to Lt. Rowe that he was hauling liquor, but the search was started and the liquor found before this statement was made.

### 3

Thereafter the defendant was arrested and taken to the City jail, from which he was released on bond a short time later.

Later Lt. Rowe contacted the local Investigator for the Alcohol Tax Unit and requested that the Federal Government adopt the case, which was subsequently done. No charge has been filed against the defendant in the State or Municipal court and no proceedings had against him there.

### 4

There has existed, and does now exist, a general course of cooperation between Federal officers and State officers whereby the former adopt for federal prosecution liquor cases of a substantial nature wherein federal violations are discovered by the State officers.

### Discussion

It is admitted that the City Police making the search had no search warrant. They had no information from any source that would lead them to believe that the defendant was bringing into the city an automobile load of contraband liquor on that particular day or at that particular time and place. They did have the license number and a general description of the automobile as being one that was sometimes used in the illegal transportation of contraband liquor, that is, illegal under the ordinances of the City of Hot Springs, the law of Arkansas and the law of the United States. In other words, the automobile bearing that particular license number and general description was suspect, but that information did not constitute reasonable grounds to permit the City Police to search the automobile at any and all times wherever it might be found, but in order to constitute probable cause to search without a search warrant, some additional information must have been possessed so that a reasonable person would have had the right to believe that the suspected automobile was engaged in the particular violation at the identical time of the search. The fact that the search disclosed an actual violation cannot be considered, and whenever the testimony of Lt. Rowe and Officer Hughes is considered, the conclusion is irresistible that they acted upon the belief by Lt. Rowe that the license number of the defendant's automobile was one of the suspected license numbers which he had obtained from some source and placed in his book for future reference and use. This was not sufficient, in my opinion, to constitute probable cause and to warrant a search without a search warrant. Therefore, the search was illegal under the Federal, as well as the State, law.

While it seems to be the rule that the federal government has the right "to avail itself of evidence improperly seized by state officers operating entirely upon their own account", it is equally true that although "the *mere* participation in a state search of one who is a federal officer does not render it a federal undertaking, the court must be vigilant to scrutinize the at-

tendant facts with an eye to detect and a hand to prevent violations of the Constitution by circuitous and indirect methods." Byars v. United States, 273 U.S. 28, 47 S. Ct. 248, 250, 71 L.Ed. 520. In this regard, it has been held without deviation over a long period of time that evidence obtained through wrongful search and seizure by State or City officers, acting independently of the federal government, and not in the presence of or with the participation of federal officers, is admissible in a prosecution in a United States Court, even though the property seized was delivered by the State officers to Federal authorities for the purpose of being used as evidence in connection with the prosecution. Also, it is equally well settled that evidence obtained through a search and seizure by State and City officers in cooperation with Federal officers, or in the presence of Federal officers, should be suppressed when seasonably challenged in an appropriate manner. United States v. Butler et al., 10 Cir., 156 F.2d 897, 898, and cases cited therein; Byars v. United States, supra; Lustig v. United States, 1949, 338 U.S. 74, 69 S.Ct. 1372. The challenge has been made here in the proper manner and at the proper time.

The court is justified in believing that if the search and seizure had revealed only a small amount of contraband liquor the Federal government would not have been asked to adopt the case. This seems to be the only time that Lt. Rowe made such a request of the Federal officers, and the request was made by Lt. Rowe because of the comparatively large amount of the contraband liquor discovered by the illegal search. The officers are not to be censured because of the exchange of information of the whereabouts of individuals suspected of the commission of a crime of any nature, and regardless of whether the crime is one against the City, State or Federal Government, but that does not justify officers in unlawfully obtaining information and evidence and in delivering the evidence to the Federal government for use in the prosecution of an individual. And, while Lt. Rowe may not have made prior requests of the Federal officers to adopt these cases, it seems to have been the general practice in the past to make such requests. See Low-

rey v. United States, 8 Cir., 128 F.2d 477, 479.

The protection accorded an individual, whether actually guilty or innocent, by the 4th Amendment against unlawful search and seizure, and the exclusion of evidence so obtained, should be extended to any case wherein Federal officers engage in a course of cooperation with State officers, even though there be no actual physical participation in a search, whereby the latter are in reality securing evidence for a federal prosecution. If the search is unlawful, an accused is entitled to the same protection that would be accorded him if the unlawful search had been made solely by Federal officers in the first instance. In this manner only can the court "prevent violations of the Constitution by circuitous and indirect methods", and this must be the result regardless of the good faith of the State officers.

It would not do to say that the evidence should be admitted with the caution that in the future such evidence will not be permitted, because to continue to permit the introduction of such evidence would be to approve and encourage a custom or common practice of illegal cooperation.

In the case of United States v. Butler, supra, the court said [156 F.2d 898]: "Where state and federal officers have a general understanding and common practice that the latter may adopt and prosecute in the federal courts offenses which the former discover in the course of their operations and a prosecution which originated by an unlawful search and seizure by state officers is adopted, the evidence obtained as the result of the search and seizure is to be suppressed in like manner as though the search and seizure had been made by federal officers."

The factor to be considered in determining whether the defendant would be prosecuted by the City of Hot Springs was whether the illegal search would reveal a substantial amount of contraband. If the search revealed a substantial amount or quantity the officers had in mind calling upon the Federal officers to adopt the case. If the amount had been small or inconsequential the defendant would have been

proceeded against in the Municipal Court of the City of Hot Springs. To sustain this kind of a search would be tantamount to allowing the fruits of the search to determine the disposition of the charge.

In the case of Lowrey v. United States, supra, the court said [128 F.2d 479]: "But it is also held that where the state and federal officers have the understanding and operate under the practice revealed by the evidence in this case, under which the prosecution of the offender is invariably tendered to the federal officers and by them accepted if the offense is considered of sufficient importance, the evidence obtained in the course of the unlawful search by state officers must be excluded. Sutherland v. United States, 4 Cir., 92 F.2d 305; Byars v. United States, supra; Gambino v. United States, supra [275 U.S. 310, 48 S.Ct. 137, 72 L.Ed. 293, 52 A.L.R. 1381]; Fowler v. United States, 7 Cir., 62 F.2d 656; Ward v. United States, 5 Cir., 96 F.2d 189."

The court feels that this case fairly falls within the condemnation of the law as announced in Lowrey v. United States, supra, and in United States v. Butler, supra.

The court realizes fully that the effect of the decision in this case may be to release the defendant, who was actually engaged in violating the law, but it is of more importance that our constitutional guarantees be preserved than that any particular individual be punished for a particular offense.

Conclusions of Law

1

The court has jurisdiction of the person of the defendant and of the subject matter of this motion.

2

The State officers did not have a search warrant, and neither did there exist probable cause for the search of defendant's automobile without a warrant. Therefore, the search and seizure was unlawful under the 4th Amendment to the Constitution of the United States.

3

By virtue of the general course of cooperation existing between the Federal and State officers in cases of this kind, this search was in legal effect a search by Federal officers, and therefore, the evidence so obtained by the unlawful search and seizure should be suppressed. Also, since the indictment is based upon evidence derived from the unlawful search and seizure, the indictment should be quashed.

4

An order in accordance with the above, sustaining the motion to suppress evidence and quashing the indictment, should be entered.