**William Albert HESS, Plaintiff,**

**v.**

**Larry ORTON, Ronald Wentz, Stanley F. Johnson, District Attorney in and for the 20th Judicial District, Boulder County, Colorado, People of the State of Colorado, and the United States, Defendants.**

**Civ. A. C–1321.**

United States District Court
D. Colorado.

June 9, 1969.

Williams, Taussig & Trine, by Paul Snyder, Jr., and William D. Neighbors, Boulder, Colo., for plaintiff.

James L. Treece, U. S. Atty., Denver, Colo., for defendants Larry Orton, Ronald Wentz, and the United States.

Stanley F. Johnson, Dist. Atty., in and for 20th Judicial District, Boulder County, Colo., on behalf of himself and defendant People of State of Colorado.

## MEMORANDUM OPINION AND ORDER

ARRAJ, Chief Judge.

This matter is before the Court on defendants' motions to dismiss plaintiff's complaint for declaratory judgment and injunction. The federal defendants ground their motion on lack of subject matter jurisdiction and failure to state a claim upon which relief can be granted, while the state defendants rely upon the former base only.

In substance, the complaint alleges an illegal search and seizure by the defendant federal agents under a federal warrant, issued by this Court, and the pendency of a state criminal prosecution against plaintiff based on the evidence so obtained. The warrant (exhibit B to the complaint) was issued regarding violations of 26 U.S.C. § 4744 and 21 U.S.C. § 360a(c)(2) and recited that the affiant stated that he had reason to believe that property in violation of these provisions was concealed on certain premises. The warrant issued allowing a search of the premises at any time in the day or night. According to the return (exhibit C to the complaint), the warrant was executed during the night and suspected marihuana was seized. The complaint avers that the defendant federal agents arrested plaintiff and then turned him and the seized evidence over to state authorities who initiated prosecution in state court. Illegality of the warrant, search and seizure is claimed to arise from violations of the Fourth Amendment to the United States Constitution, federal statutes regarding searches [1] and the Federal Rules of Criminal Procedure in the following particulars: 1) the warrant allowed search at any time in the day or night based only on the assertion of "reason to believe" that contraband property was on the premises; 2) failure of the supporting affidavit to establish probable cause; and 3) improper execution of the search. It is further alleged that plaintiff has no adequate remedy at law and is threatened with immediate and irreparable injury.

In consequence, the complaint seeks a declaration that the warrant, search and seizure were illegal and an injunction against the defendant federal agents and those acting with them preventing them from testifying in or making the evidence available to the state criminal prosecution. Additionally, it is requested that the federal defendants reacquire and destroy the evidence if it has been turned over to the state authorities.

For purposes of this motion, it will be assumed that the warrant, search and seizure are illegal in all the particulars advanced by plaintiff.

Taking the federal defendants first, the jurisdiction of this Court is clear under the "supervisory powers over federal law enforcement agencies" as pronounced in Rea v. United States, 350 U.S. 214, 76 S.Ct. 292, 100 L.Ed. 233 (1956). Even the dissenting justices in *Rea,* though questioning the existence of

---

1. Though the complaint specifically claims violations of only the Fourth Amendment and the Federal Rules of Criminal Procedure, a memorandum of law filed by plaintiff regarding illegality of the warrant, search and seizure indicates reliance on violation of federal statute as well.

such a supervisory power, stated that "the federal courts undeniably have the power to issue an injunction in this case * * *." 350 U.S. at 219, 76 S.Ct. at 295. While plaintiff also relies on 28 U.S.C. § 1343(4), we do not find it necessary to pass on whether this provision provides a statutory base for the action. *See* Bolger v. United States, 189 F.Supp. 237, 249 n. 1 (S.D.N.Y.1960), *aff'd in part sub nom.*, Bolger v. Cleary, 293 F.2d 368 (2d Cir. 1961), rev'd, 371 U.S. 392, 83 S.Ct. 385, 9 L.Ed.2d 390 (1963).

The question here is whether plaintiff has stated a claim upon which the equitable relief sought may be granted. The answer depends upon an analysis of *Rea* and the effect of three subsequent decisions—Wilson v. Schnettler, 365 U.S. 381, 81 S.Ct. 632, 5 L.Ed.2d 620 (1961), Mapp v. Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961), and Cleary v. Bolger, 371 U.S. 392, 83 S.Ct. 385, 9 L.Ed.2d 390 (1963). In *Rea*, the Court reversed the denial of an injunction to prevent a federal agent from testifying in or providing evidence to a state criminal prosecution where the evidence and testimony concerning it were the product of a search and seizure, under federal warrant, in violation of the Fourth Amendment and the Federal Rules of Criminal Procedure. In that case, after a federal district court had suppressed the evidence regarding a federal indictment, the state prosecution, based on the illegally obtained evidence and the federal agent's testimony regarding it, was initiated on complaint of the federal agent. The reversal was based on the previously noted supervisory power and the need "to enforce the federal Rules against those owing obedience to them." 350 U.S. at 217, 76 S.Ct. at 294.

The denial of similar injunctive relief was upheld in Wilson v. Schnettler, 365 U.S. 381, 81 S.Ct. 632, 5 L.Ed.2d 620 (1961), where a warrantless search and seizure by federal agents incidental to an arrest was challenged after denial of the plaintiff's state court motion to suppress. The Court based its decision on three principal grounds. The first was simply that the complaint failed to allege that the search and seizure were illegal in that there was no allegation that the arrest was made without probable cause. Secondly, there was no allegation of lack of an adequate remedy at law in the state court and, the Court found, the complaint affirmatively established not only the existence of such a remedy but plaintiff's utilization of it. It was noted that should the state trial court adhere to its suppression ruling, the matter could be appealed to the state supreme court and thence to the United States Supreme Court for determination of any federal questions. Regarding plaintiff's utilization of the state suppression proceeding, the Court found that state jurisdiction had thus attached to the exclusion of all other courts.

The third ground is most significant. While *Rea* deemed the problem of federal interference with state criminal prosecutions irrelevant, *Wilson* stated that

There is still another cardinal reason why it was proper for the District Court to dismiss the complaint. We live in the jurisdiction of two sovereignties. Each has its own system of courts to interpret and enforce its laws, although in common territory. These courts could not perform their respective functions without embarrassing conflicts unless rules were adopted to avoid them. Such rules have been adopted. One of them is that an accused "should not be permitted to use the machinery of one sovereignty to obstruct his trial in the courts of the other, unless the necessary operation of such machinery prevents his having a fair trial." Ponzi v. Fessenden, 258 U.S. 254, 260, 42 S.Ct. 309, 66 L.Ed. 607. Another is that federal courts should not exercise their discretionary power "to interfere with or embarrass threatened proceedings in state courts save in those exceptional cases which call for the interposition of a court of equity to prevent irreparable injury which is clear and imminent * * *." Douglas v. City of Jeannette, [319 U.S. 157].

at 163, 63 S.Ct. 877, 87 L.Ed. 1324. 365 U.S. at 385, 81 S.Ct. at 635.

In distinguishing *Rea*, the Court noted the fact of prior federal suppression and the actions of the federal agent in thwarting that ruling by causing initiation of state prosecution.

The remaining Supreme Court decision in the area is Cleary v. Bolger, 371 U.S. 392, 83 S.Ct. 385, 9 L.Ed.2d 390 (1963). As that case stood before the Court, the only question was the propriety of an injunction to prevent a state officer from testifying in state criminal and administrative proceedings regarding incriminating statements elicited from plaintiff by federal agents in violation of rule 5(a) of the Federal Rules of Criminal Procedure. Relying on *Rea*, the district court had granted an injunction against both federal and state officers concerning violations of rule 5(a) and the Fourth Amendment. Bolger v. United States, 189 F.Supp. 237 (S.D.N.Y. 1960). Only the state officer appealed, the Second Circuit affirming, Bolger v. Cleary, 293 F.2d 368 (2d Cir. 1961), and the Supreme Court reversing. Though the precise holding is thus not presently in point, we believe that certain aspects of the opinion intimate against an overly broad reading of *Rea:*

> This Court [in *Rea*], invoking its "supervisory powers over federal law enforcement agencies" * * *, reversed the denial of an injunction and directed that the requested relief be granted in order to prevent frustration of the Federal Rules under which suppression had been ordered. Both lower courts in the present case evidently took *Rea* to mean that federal officers transgressing the Federal Rules of Criminal Procedure may always be enjoined from utilizing their ill-gotten gains in a state criminal prosecution against the victim or from directly or indirectly passing them along to state authorities for such use.

We need not, however, determine in this instance the correctness of the lower courts' broad reading of the *Rea* case, cf. Wilson v. Schnettler, 365 U.S.

381, 81 S.Ct. 632, 5 L.Ed.2d 620, on the basis of which the federal officers here were enjoined. 371 U.S. at 398–399, 83 S.Ct. at 389 (footnotes omitted).

The Court further noted that the Second Circuit did not find the intervening decision in Mapp v. Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961), pertinent to the district court's injunction. 371 U.S. at 398 n. 9, 83 S.Ct. 385. Moreover, though *Rea* had dismissed the decision as irrelevant, the Court in *Cleary*, as it did in *Wilson*, again invoked the principles of Stefanelli v. Minard, 342 U.S. 117, 72 S.Ct. 118, 96 L.Ed. 138 (1951), counseling against federal injunctive interference with state criminal proceedings.

The problems of *Rea* and *Wilson* also bore on the decision in Mapp v. Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961). As is well known, the Court there held the exclusionary rule regarding unconstitutionally seized evidence applicable to the states. In reaching this conclusion, the Court stated that

> as was said in *Elkins* [v. United States, 364 U.S. 206, 80 S.Ct. 1437, 4 L.Ed.2d 1669 (1960)], "[t]he very essence of a healthy federalism depends upon the avoidance of needless conflict between state and federal courts." 364 U.S., at 221, 80 S.Ct. at page 1446. Such a conflict, hereafter needless, arose this very Term, in Wilson v. Schnettler, 365 U.S. 381, 81 S.Ct. 632, 5 L.Ed.2d 620 (1961), in which, and in spite of the promise made by *Rea*, we gave full recognition to our practice in this regard by refusing to restrain a federal officer from testifying in a state court as to evidence unconstitutionally seized by him in the performance of his duties. Yet the double standard recognized until today hardly put such a thesis into practice. In non-exclusionary States, federal officers, being human, were by it invited to and did, as our cases indicate, step across the street to the State's attorney with their unconstitutionally seized evidence. Prosecution on the

basis of that evidence was then had in a state court in utter disregard of the enforceable Fourth Amendment. If the fruits of an unconstitutional search had been inadmissible in both state and federal courts, this inducement to evasion would have been sooner eliminated. There would be no need to reconcile such cases as *Rea* and *Schnettler*, each pointing up the hazardous uncertainties of our heretofore ambivalent approach.

Federal-state cooperation in the solution of crime under constitutional standards will be promoted, if only by recognition of their now mutual obligation to respect the same fundamental criteria in their approaches. 367 U.S. at 657–658, 81 S.Ct. at 1693. *See* Linkletter v. Walker, 381 U.S. 618, 634, 85 S.Ct. 1731, 14 L.Ed.2d 601 (1965).

Considering these decisions together and the allegations of the complaint before us, we conclude that a case warranting federal equitable intervention is not disclosed. We are led to this conclusion because of three principal differences between the instant case and *Rea*.

The first of these differences is state application of the exclusionary rule and the availability of state court suppression procedures. While *Rea* was a pre-*Mapp* decision and the state there involved did not voluntarily follow the exclusionary rule, *see* Breithaupt v. Abram, 58 N.M. 385, 271 P.2d 827 (1954), *Mapp* has decreed that state as well as federal courts now exclude unconstitutionally seized evidence. The courts of Colorado follow this practice and rule 41(e) of the Colorado Rules of Criminal Procedure, which is virtually identical to the federal rule 41(e), provides for pretrial suppression. It is evident, at least as regards search and seizure practices on a federal constitutional level, that *Mapp* has eliminated the need for *Rea*. The same standard of reasonableness is to be applied under the Fourth and Fourteenth Amendments, Ker v. California, 374 U.S. 23, 83 S.Ct. 1623, 10 L.Ed.2d 726 (1963), and the Colorado courts are fully competent to adjudicate such constitutional questions, with, of course, the possibility of ultimate review by the United States Supreme Court. In these circumstances, we thus do not feel that federal intervention would be appropriate. *Compare* Caterina v. Miller, 259 F.Supp. 131 (S.D. Fla.1966), *with* Lucas v. Mayo, 222 F. Supp. 513 (S.D.Tex.1963); *see* Bolger v. Cleary, 293 F.2d 368, 371 (2d Cir. 1961) (dissenting opinion). In this regard, it should also be recalled that one of the primary grounds for dismissal in *Wilson* was the existence of a state remedy for suppression of illegally obtained evidence.[2]

We acknowledge that *Mapp* does not obviate all problems in the area. In conducting searches and seizures federal officers are to follow the Federal Rules of Criminal Procedure and federal statutory law as well as the Constitution. To the extent that these rules and statutes do not rise to constitutional dignity, they are left untouched by *Mapp* and the states are not obliged to apply them, at least as regards searches and seizures by state officers. *See* Ker v. California, *supra*. It is a difficult and unresolved question whether state courts must exclude evidence obtained by federal officers in violation of federal rules and statutes of a nonconstitutional nature, *see* Cleary v. Bolger, 371 U.S. 392, 403–404, 83 S.Ct. 385, 9 L.Ed.2d 390 (1963) (Goldberg, J., concurring), and the Court in *Cleary* stated that

> To the extent that respondent's claims involve infractions merely of the Federal Criminal Rules, we need not decide whether an adverse state determination upon such claims would be reversible here. 371 U.S. at 401, 83 S.Ct. at 390. *See* The Supreme Court, 1962 Term, 77 Harv.L.Rev. 62, 149–52 (1963).

2. We note that the state defendants have filed in connection with their motion to dismiss a copy of a motion to suppress filed by plaintiff in the state court.

Despite this important uncertainty, injunctive relief, in our opinion, should not be granted even if the instant case does in fact involve violations of federal statutes or rules which are not also prohibited by the Fourth and Fourteenth Amendments. It seems fair to say that in *Rea* state court admission of the illegally obtained evidence was a virtual certainty. Here, by virtue of the state suppression procedure, there is the possibility of exclusion on both federal and state constitutional grounds, *see* Hernandez v. People, 153 Colo. 316, 385 P.2d 996 (1963), and the problem of violations of non-constitutional federal statutes and rules may never be met. Inadequacy in fact of the state court remedy is not a certainty and consequently the threat of irreparable injury would seem to be neither clear nor imminent. Further, though it cannot be said whether state courts must enforce federal statutes and rules against federal officers by the exclusionary rule, it appears that there is at least no federal prohibition against their so doing. While we in no way intend to suggest what the state court should do if the situation arises, it would not seem unreasonable, since the search and seizure were conducted by federal agents under federal warrant, for a state court to gauge the warrant and actions under it by federal standards.

Moreover, adequacy of the state legal remedy is not the only consideration in these cases and there are two additional factors which lead us to conclude that a claim upon which the relief sought may be granted is not presented by the instant complaint. These second and third differences from *Rea* are, respectively, prior federal suppression and purposeful avoidance of the federal requirements. In *Rea,* the evidence in dispute had initially been suppressed by a federal district court regarding a federal indictment. The rule under which it was suppressed provided the evidence "shall not be admissible in evidence at any hearing or trial." Fed.R.Crim.P. 41(e). Here, there has been no federal indictment and no federal court suppression. Further,

in *Rea,* after the federal court found the evidence to have been illegally obtained, the federal agent caused initiation of state prosecution. It is hard to imagine a more manifest attempt to avoid application of federal standards. Again, this is not the case here for there is nothing in the complaint, explicitly or implicitly, to indicate a purposeful attempt to avoid federal standards.

As *Wilson* reaffirms, actions seeking such injunctions against federal officers do indeed raise problems of federal-state relations. While neither of the second and third differentiating factors affects the degree of interference with state criminal proceedings, both are obviously relevant to the necessity for intervention. In terms of necessity for interference with state prosecutions, there is a meaningful distinction between mere violations of federal search and seizure rules and intentional efforts to avoid not only the application of those rules but also the effect of a court ruling regarding them.

■ In conclusion regarding the federal defendants, we find that the complaint does not disclose a case in which the equitable relief sought should be granted. Our conclusion is not based on any one or more of the factors differentiating this case from *Rea* being dispositive of the matter. Rather, we are led to this result by a consideration of all factors together in hopes of reaching a reasonable accommodation of federal and state interests so as to best serve the principles of federalism. Though we do conclude against injunctive relief here, it must be noted that we believe *Rea* to be of continued vitality, available for application should circumstances so warrant.

■ Finally, we must consider the complaint insofar as it is directed toward the state defendants. As is apparent from the conclusion regarding the federal defendants, we find that a claim for relief is not presented against the state defendants either. Apart from the previous discussion, dismissal as to the state defendants is dictated by Cleary v. Bol-

**1184**

ger, 371 U.S. 392, 83 S.Ct. 385, 9 L.Ed.2d 390 (1963), which, as previously stated, reversed the grant of an injunction against a state officer who acquired the illegally obtained evidence as a result of witnessing the federal agents' interrogation of the plaintiff. The complaint here does not allege any state actions other than initiation of the criminal prosecution and plaintiff's counsel has stated in oral argument that state officers did not participate in the search and seizure. It thus appears that the only reason for having the state defendants in the case is to assure that they will be bound by any decree which might be entered. In *Cleary*, the Court specifically rejected the notion that injunctive relief against the state officer could be justified on "the rationale that it was required in order to make the injunction against the federal officers effective." 371 U.S. at 399, 83 S.Ct. at 389. Inasmuch as *Cleary* implicitly recognizes jurisdiction as to state officers, our dismissal as to the state defendants is based upon failure to state a claim for relief.

It is therefore

Ordered that defendants' motions to dismiss be and hereby are granted and the complaint is dismissed for failure to state a claim upon which relief can be granted.